NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-14-0001120
29-JAN-2019
09:26 AM

NO. CAAP-14-0001120

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

IN THE MATTER OF THE WILLIAM AND MARY FONTANA EXEMPT
GENERATION SKIPPING TRUST FOR THE BENEFIT OF
JAMES A. FONTANA, DATED DECEMBER 31, 2010

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(TRUST NO. 11-1-0167)

ORDER DISMISSING APPEAL AS MOOT
(By:  Ginoza, Chief Judge, Fujise and Reifurth, JJ.)

Petitioner-Appellant James A. Fontana (James),
appeals from the August 19, 2013 "Judgment Pursuant to Order
Denying (A) Petition for: (1) Probate Rule 26 Accounting;
(2) Expansion of Appointment of Special Master Colin Goo;
(3) Review and Examination of Duties of the Trustee and Trustee
Committee Re Duty of Loyalty for Special Needs Trust Beneficiary
[James]; (4) Review and Revision of Special Needs Trust
Investments by Trustee for Under Productive Investments; and
(5) Reimbursement of Attorney's Fees and Costs and (B) Petitioner
[James's] Petition to Adopt [Hawaiʻi] Rules of Civil Procedure
Discovery Rules 26-37 to Allow Petitioner to Conduct Discovery
Addressed to Trusts and Trustee Central Pacific Bank and Third
Parties Whose Records Are Relevant to This Case" (Judgment)
entered by Circuit Court of the First Circuit sitting in probate
(Probate Court).[1]

---

[1]     The Honorable Derrick H.M. Chan presided.

Based on the documents filed in this case, it appears that:

1. This case arises from a controversy involving The William and Mary Fontana Exempt Generation Skipping Trust for the Benefit of [James] (Trust), which provided that the trustee, now Respondent-Appellee Central Pacific Bank (CPB), could

> distribute for the benefit of [James], such amount or amounts of the net income, but not principal, of the trust estate, as the trustee may determine in its sole and absolute discretion to be necessary or advisable to provide for such beneficiary's special needs, subject to this Article [].

> Additionally, the trustee may distribute for the benefit of WILLIAM J. FONTANA and/or ANTHONY J. FONTANA, such amount or amounts of the net income, but not principal, of the trust estate, as the trustee may determine in its sole and absolute discretion to be necessary or advisable to provide for such beneficiaries' education. No distributions shall be made to either such grandchild during the term of this trust for any purpose other than education. Even after the death of [James], this trust shall not make any distributions to either of WILLIAM J. FONTANA and/or ANTHONY J. FONTANA for any purpose other than education.

The Trust provided that "special needs"

> may include, to the extent not provided by federal, state or local government agencies and departments, but not be limited to, supplemental medical or dental care, clothing and personal effects, spending money, special equipment, electronic devices, transportation, programs of training and education, social or cultural activities, hobbies, recreation and travel, including, in the case of travel, the costs and expenses of a travel companion for [James] in the sole discretion of the trustee.

The Trust provided for termination upon James's death, "and then when the youngest surviving of [the named grandchildren] attains age 40 years" and provided that the trust estate would be distributed to the grandchildren or their heirs upon termination.

2. A Suggestion of Death was filed by CPB on February 2, 2018, who represented that James died on August 2, 2017. CPB further noted that no substitution of party had occurred on behalf of James upon his death.

3. On November 16, 2018, this Court issued an order directing James's counsel, Gary Y. Shigemura, (Shigemura) to file either a motion to substitute or a motion for dismissal of James's appeal.

2

4. On November 26, 2018, Shigemura filed a "Motion to Temporarily Substitute [Shigemura] in Place of James" (Motion to Substitute).

5. On December 3, 2018, CPB filed a response without opposition to the Motion to Substitute, but noted that the issues raised in this matter appear to be moot, given that James is now deceased and his sons are the heirs at law and beneficiaries of the Trust.

6. On December 20, 2018, this court ordered Shigemura to explain why this case is not moot.

7. Shigemura responded that (a) a Petition for Adjudication of Intestacy and Appointment of Personal Representative for the Estate of [James] was submitted on December 31, 2018 and is currently awaiting a hearing date;[2] (b) once appointed, the personal representative will seek substitution in place of James in this appeal; and (c) the appeal is not moot because this appeal falls squarely within the exceptions to the mootness doctrine.

8. Shigemura has not shown that this appeal is not moot, i.e., that anyone other than James would benefit from the continuation of this appeal.

a. By its own terms, the Trust terminates upon James's death and then when the youngest of James's sons attains the age of 40 years. Upon termination of the Trust, the entire trust estate is to be distributed to James's sons.

b. Shigemura has not shown how, even if James's position in this case prevailed, any money judgment would be due to anyone other than James, for future expenditures that are now an impossibility, or to the Trust for lost income or disgorgement of trustee's fees.

_____

[2] Our review of probate court records as of the date of this order does not reflect that the petition has been filed.

c.     James's sons have not entered appearances in this case, although they have in the past and continue to receive service of documents filed herein.[3]

9.     Shigemura presents multiple arguments that this case presents an exception to the mootness doctrine, arguing that James's appeal presents a "matter of great public concern," shedding light on two under-represented segments of society:  the elderly and special needs beneficiaries, and that the Hawai'i Legislature has taken "special efforts to protect and acknowledge the special vulnerability of these two segments of society," although he does not describe those special efforts.

10.    These are not adequate reasons under <u>Johnston v. Ing</u>, 50 Haw. 379, 381, 441 P.2d 138, 140 (1968), which requires consideration of "[(1)] the public or private nature of the question presented, [(2)] the desirability of an authoritative determination for the future guidance of public officers, and [(3)] the likelihood of future recurrence of the question."  "The cases in this jurisdiction that have applied the public interest exception have focused largely on political or legislative issues that affect a significant number of Hawai'i residents."  <u>Hamilton ex rel. Lethem v. Lethem</u>, 119 Hawai'i 1, 7, 193 P.3d 839, 845 (2008).[4]

---

[3]     We note that, on January 15, 2019, the Appellate Clerk received a letter sent by James's son, Anthony Fontana (Anthony).  Anthony writes, among other things, that "in the long run, the only 2 people suffering from all these legal fees is me and my brother" and that he "never really responded to any of these proceedings thinking that CPB & Cades Schutte are doing what's right to uphold my grandparents wishes."  We surmise that, to the extent that Anthony has expressed an opinion regarding this case, he does not wish to see it continue.

[4]     <u>See</u>, <u>e.g.</u>, <u>Doe v. Doe</u>, 116 Hawai'i 323, 327, 172 P.3d 1067, 1071 (2007) (holding that the public interest exception applied because it was "in the public's interest for this court to review the family court's ruling that Hawaii's grandparent visitation statute [was] unconstitutional on its face."); <u>Kaho'ohanohano v. State</u>, 114 Hawai'i 302, 333, 162 P.3d 696, 727 (2007) (holding that the subject appeal was of a public nature because the outcome would affect all state and county employees); <u>Right to Know Comm. v. City & County of Honolulu</u>, 117 Hawai'i 1, 9, 175 P.3d 111, 119 (App. 2007) (holding that the question presented was of a public nature because the issue whether the City council must conduct its business in full view of the public and in compliance with the Sunshine Law was more public in nature than private.).

a. James sought distribution of income from the special needs Trust and information, records, and an accounting of the investments handled by CPB to justify why James was not receiving such distributions. CPB's purported refusal to distribute funds to James, to modify the special needs provision to invade Trust corpus and/or increase income payments to cover the costs of James's unforseen length of survival, CPB's alleged breach of duties (fiduciary, loyalty, and to prudently invest), CPB's obligation to provide information pertaining to the prior trustee, and the existence of conflicts of interest with Master Goo and CPB's counsel, were relevant to James, but were not of a public nature. These determinations were of a private nature, where no broader, fundamental constitutional right was at issue. Id. at 14, 193 P.3d at 852 (Acoba, J., concurring).

b. No public officers are involved, to whom to provide an "authoritative determination for future guidance." Johnston, 50 Haw. at 381, 441 P.2d at 140.

c. Although issues like those raised in James's appeal may conceivably be raised in other trust cases, they are generally private matters and would be based on the unique factual circumstances presented in each case.

11. As Shigemura has failed to establish the public interest exception applies here, he has likewise failed to show the "capable of repetition yet evading review" exception applies. See Johnston, 50 Haw. at 381, 441 P.2d at 140 ("When the question involved affects the public interest, **and** it is likely in the nature of things that similar questions arising in the future would likewise become moot before a needed authoritative determination by an appellate court can be made, the exception is invoked.") (emphasis added). In any event, Shigemura does not explain how these other cases would evade review.

12. Shigemura also claims the collateral consequences exception applies, as he asserts that James's estate, including any creditors thereto, will be prejudiced if this appeal is dismissed for mootness because this appeal itself is an asset of the estate, relying on Wetzel v. Ohio, 371 U.S. 62 (1962) which we conclude is inapposite. There, the appellant died pending

5

appeal and appellant's wife as administratrix was allowed to be substituted as a party to continue appellant's challenge to, among other things, a charge against his assets. Here, even if a personal representative was appointed in the probate of James's estate, Shigemura does not allege how this person would have a personal interest in the outcome of this appeal. The moneys James sought from the Trust were to pay for his special needs expenses and he did not allege that he made out-of-pocket payments for which he was entitled to reimbursement. Although Shigemura's response discloses one potential creditor, Joan Acosta, who owned a care home at which James resided in either 2016 or 2017, the exact dates are unknown[5] and, in any event, Shigemura fails to demonstrate any collateral consequences to James or his sons, i.e. those with an interest in the trust. See Hamilton, 119 Hawai'i at 8, 193 P.3d at 846 ("litigant must show that there is a reasonable possibility that prejudicial collateral consequences will occur." (quoting Putnam v. Kennedy, 900 A.2d 1256, 1261-62 (Conn. 2006)). Moreover, the asserted collateral consequences do not resemble those recognized by the Putman Court, such as custody determinations,[6] future bail proceedings and other "stigma,"[7] or reputational harm.[8] Putman, 900 A.2d at 1263-64.

---

[5] The pending "Petition for Adjudication of Intestacy and Appointment of Personal Representative" contains a Declaration by Ms. Acosta and a letter signed by her. The Declaration, however, is incomplete, does not disclose when James resided at Ms. Acosta's care home, and is not dated or executed.

[6] Roark v. Roark, 551 N.E.2d 865, 868-69 (Ind. Ct. App. 1990) (noting "potentially devastating" collateral consequences for parent of expired "child in need of services" order, including impacts on future presentence investigations, in-court impeachments and child custody determinations).

[7] Wooldridge v. Hickey, 700 N.E.2d 296, 298 (Mass. App. Ct. 1998) (appeal from abuse prevention order not rendered moot by order's expiration because of its collateral consequences, including effect in future bail proceedings and other "stigma").

[8] Smith v. Smith, 549 S.E.2d 912, 914 (N.C. Ct. App. 2001) (expired domestic violence protective order not moot because of "'collateral legal consequences'" such as consideration in custody determination and "non-legal collateral consequences" such as reputation harm).

13. Shigemura has not shown the type of prejudicial collateral consequences that other courts have contemplated in applying this exception to the mootness doctrine; the collateral consequences exception is therefore inapplicable here.

THEREFORE, IT IS HEREBY ORDERED that the instant appeal is dismissed as moot.

DATED: Honolulu, Hawai'i, January 29, 2019.


On the briefs:


Gary Y. Shigemura and
Brice K. Ueda,
for Petitioner-Appellant.

Rhonda L. Griswold and
Andrew G. Odell,
for Respondent-Appellee.

Chief Judge

Associate Judge

Associate Judge

7